# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| NATHANIEL HOUSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 00-BU-0253-S |
| | ) | |
| TRICON METALS & SERVICES, INC., and DAVE BRADEN, individually and in his official capacity with Tricon Metals & Services, Inc., | ) ) ) ) ) | **ENTERED** SEP 2 8 2000 |
| | ) | |
| Defendants. | ) | |

## Memorandum Opinion

In his complaint, Plaintiff Nathaniel Houston asserts claims against Defendants Tricon Metals & Services, Inc. ("Tricon") and Dave Braden, Plaintiff's former employer and supervisor, respectively, alleging that each is liable for violating his rights protected by the Equal Protection Clause of the Fourteenth Amendment; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1981 ("section 1981"); and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"). By prior order, this Court dismissed all claims against Braden except for one alleging that he is liable for violating section 1981. Now before the Court is Defendants' motion for summary judgment on all remaining claims. (Doc. No. 18). Defendants have filed evidence and a brief in support of their motion. Plaintiff filed a

*23*

brief in opposition, although no additional evidence.  Thereafter, Defendants filed a reply to Plaintiff's brief.  For the foregoing reasons, the Court concludes that Defendants' motion for summary judgment is due to be GRANTED.

## I. SUMMARY JUDGMENT STANDARDS

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial is present. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for its motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact.  Celotex, at 323.  See also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its to initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial."  Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994).  In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. Rooney v. Watson, 101 F.3d 1378, 1380 (11th Cir. 1996) (citing Hale v. Tallapoosa Co., 50 F.3d 1579, 1581 (11th Cir. 1995)).

## II. BACKGROUND[1]

Defendant Tricon is a national supplier of alloy steel materials, and it operates two production facilities in the Birmingham area: a fabrication/warehouse facility in Irondale, Alabama and a Clad Shop located in northeast Birmingham.  At its Irondale facility, Tricon fabricates metal products and warehouses both metal products and supplies.  At the Clad Shop, Tricon employees weld hard metals onto mild steel plates to create wear-resistant metal products.  Tricon hired Plaintiff, an African-American male, in August 1990 and assigned him to work at the Irondale facility.  In about October 1996, Tricon transferred Plaintiff to work at the Clad Shop, which was managed by Dave Braden, a white male.  Braden was thus in a supervisory position over Plaintiff until Tricon terminated Plaintiff's employment on July 13, 1999, an employment decision in which Braden was admittedly involved.

Upon his hire, Plaintiff was designated as a Warehouse Trainee at the Irondale facility.  In that position, Plaintiff was responsible for loading and unloading delivery trucks, grinding steel plates, and preparing orders for shipment.  Plaintiff received promotions from Trainee to Class "C" Warehouseman and then Class "B" Warehouseman on January 20, 1993 and June 16, 1995, respectively.  These promotions increased Plaintiff's pay but did not implicate any material change in job duties. However, on five occasions between March 1992 and October 1994, Plaintiff refused opportunities offered to him to progress from his grinding duties to become a "table loader," which involves using a crane to place steel plates onto production tables for burning machine operators

---

[1]"The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts.  See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1400 (11th Cir. 1994)." Underwood v. Life Ins. Co. of Georgia, 14 F.Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

to cut upon.  Clements advised Plaintiff that Tricon's policy concerning the order of progression in the warehouse is to move employees from grinding to table loading before they are given the opportunity to move to other positions and that until he accepted the table loader position, he would remain in his grinding position.  The record shows, however, that, at some unspecified time, Plaintiff did eventually perform table loading responsibilities.

While Plaintiff worked at the Irondale facility, from 1990 to about October 1996, he and one of his supervisors, Pat Clements, a white male, did not get along well with each other.  Plaintiff suggests that Clements harassed him for racial and perhaps other reasons.  Although his allegations are somewhat vague, Plaintiff appears to contend that Clements constantly gave him job directions while he was on breaks, though Clements allegedly did not do that to other employees.

However, Plaintiff's work record at Irondale also reflects some problems with insubordination towards another supervisor, Rob McKay.  First, on October 13, 1992, McKay considered Plaintiff to have walked away from him in a disrespectful manner while McKay was explaining to him how to use a forklift.  McKay counseled Plaintiff on this occasion that such actions would not be tolerated and that he would be suspended if he displayed a similar attitude in the future.  Plaintiff recalls the incident, although he suggests that McKay's instruction was unnecessary because he already knew how to use the forklift, and Plaintiff does not recall walking away.  Several months later, on February 19, 1993, McKay beckoned Plaintiff to look at some parts that Plaintiff had cleaned but in a fashion McKay found wanting.  According to McKay, while he was explaining to Plaintiff the way he wanted the parts cleaned, Plaintiff turned and walked away, and continued to do so even after McKay asked him to come back.  McKay deemed Plaintiff's

actions to be insubordination, and he suspended Plaintiff for three days without pay. Plaintiff admits receiving the suspension, but he again denies having walked away from McKay during the incident. Nonetheless, Plaintiff acknowledges that he got along "okay" with McKay overall and that he "can't recall" that McKay instituted the suspension for racial reasons.

In about October 1996, Tricon transferred Plaintiff from Irondale to the Clad Shop because of the difficult working relationship between him and Clements. Plaintiff was the only Warehouseman working at the Clad Shop, where Tricon also had employees in the following job classifications: Clad Operator, Burner Operator, Press Brake Operator, and Warehouseman. Tricon considered these Operator positions to be "skilled," while it considered Plaintiff's Warehouseman position to be "unskilled." Plaintiff's duties as a Warehouseman at the Clad Shop were similar to those he performed at Irondale, although he additionally drove a company truck between the Clad Shop and the Irondale facility.

The record further suggests that, beginning September 21, 1997, Tricon attempted to train Plaintiff to perform at least some duties of the Clad Operator position, although he retained his Class "B" Warehouseman classification. However, after Plaintiff had an opportunity to work on the clad machine for about nine months,[2] Braden issued to him a written warning stating that Plaintiff had failed to become "proficient" on even the "most simple" clad machine, which most trainees were able to run "inside one month." This warning also said that Plaintiff had "produced more rejected plates than anyone in the history of the department" and that he would "let the machine run even when the

---

[2]This warning is actually dated December 19, 1998, which was about 15 months after Plaintiff was moved to perform some Clad Operator duties, according to the memo. However, as the Court discusses below, Plaintiff suffered injuries in a motor vehicle accident on March 25, 1998 that kept him out of work for about six months.

welds are looking terrible." Finally, the warning admonished Plaintiff for his reluctance to ask for help, or accept it when offered, and for his poor attitude: "Nathaniel gives us the impression that he is here to make his 8 hours and leave as soon as possible. He shows no interest in learning or improving. . . . If Nathaniel does not show significant improvement in the very near future, we will have to take further action." Plaintiff does not dispute the substantive allegations of Braden's criticisms, and he frankly admits that he had problems running the clad machine and that "a number" of the plates he produced were rejected because of their poor quality.

In February 1997, Braden also issued a written warning to Plaintiff for being late to work an excessive number of times. This warning, which was also signed by Plaintiff's shift supervisor, William Gant, who is black, also indicated that Plaintiff had already received a verbal warning for being late several times in December 1996. Plaintiff acknowledges that he was, in fact, late on these occasions.

On March 25, 1998, Plaintiff was involved in a non-work-related automobile accident, which caused him to suffer cuts and bruises on his hand, broken ribs, and damage to the retina of his left eye. This latter injury required Plaintiff to undergo an operation, which was performed by Dr. Greer Geiger. Plaintiff was absent from work for approximately six months, from the date of his accident until October 1, 1998.

In September 1998, during Plaintiff's absence, Tricon's insurance company refused to cover Plaintiff to drive a company truck based upon his poor driving record. Plaintiff's record at the time indicated that between April 1994 and September 1998, he had been involved in two accidents and was cited for failing to stop at a stop sign twice, for driving through a closed road, and for driving with an improper tag. Because of the insurance company's decision, Tricon relieved Plaintiff of his duties driving the company truck.

When Plaintiff returned to work at the Clad Shop on October 1, 1998, he presented a slip from Dr. Geiger's office releasing him to work with the following restrictions: "Patient should wear protective eye wear and no excessive straining." These were the only doctor-imposed restrictions communicated to Tricon. Plaintiff testified that he was able to perform his job duties, even though his left eye was sensitive to light, dust, and debris. Plaintiff informed Gant, however, that his left eye was sensitive to light, and Gant accommodated Plaintiff by moving him to a grinding table position to minimize bright light exposure. Tricon also provided Plaintiff with shaded safety equipment to protect his eyes. Plaintiff admits that, after informing his supervisor of his sensitivity to light, he was not forced to perform duties that aggravated the sensitivity. Plaintiff admits that no one at Tricon ever said anything disparaging about his condition or about him moving to the grinding position.

On February 18, 1999, though, Plaintiff received another written warning alleging poor work performance. The previous day, Plaintiff had been called into a meeting with Braden; Gary Anderson, Tricon's Production Manager; and Larry Bradford, whose capacity with the company is not otherwise revealed by the record. At that meeting Anderson told Plaintiff that "he was tired of having to deal with problems involving him and this was the last time he would do so." It appears from the written warning and Plaintiff's deposition testimony that what had precipitated the meeting was an incident that occurred between Braden and Plaintiff on February 9, 1999. Near the end of their shift, Braden had approached Plaintiff and asked him to work overtime that day. Plaintiff replied that he could not do so because his finger was infected and he was going to the doctor to have it examined. Braden allowed Plaintiff to leave, but he told Plaintiff, "You had better bring me a doctor's excuse tomorrow." Plaintiff supplied such a note the

following day, but he indicated at the meeting on February 17th that he felt like he was being "singled out" by being made to bring the doctor's excuse and for other " 'knick-knack' things." Anderson told Plaintiff that he was not being "singled out" and discussed with him his "excessive absences." He was also told that when he was asked to work over he was expected to do so, and that "he was expected to work under the same guidelines as everyone else, as described in the company manual."

Plaintiff complains, however, that Braden subjected him to harassment at the Clad Shop. It is undisputed, though, that Plaintiff did not work with Braden during the entire period he was at the Clad Shop, which employed three separate shifts. Braden worked on the first shift, and he was Plaintiff's direct supervisor only when Plaintiff also worked on that shift. Plaintiff worked on the first shift from the time he was transferred from Irondale, in about October 1996, until September 21, 1997. On that date, Plaintiff was moved to the third shift, where he remained until his automobile accident on March 25, 1998.[3] When Plaintiff returned from his extended medical leave on October 1, 1998, he was reassigned to the first shift under Braden. On February 18, 1999, Braden assigned him to work on the second shift, where he remained until he was ultimately terminated on July 13, 1999. Thus, of the approximately 33-month period Plaintiff was employed at the Clad Shop, he was directly supervised by Braden for only about half of it.

Plaintiff contends that Braden harassed him in the following ways: (1) by requiring him to provide a doctor's excuse when he told Braden he could not work overtime one day because he was going to the doctor to have his infected finger examined; (2) by allegedly questioning him after he returned to work after his accident as to whether he

---

[3]Plaintiff asserts that if there was a person considered to be his supervisor on the third shift, it was Gant, who was actually the second shift supervisor. Plaintiff acknowledges that Gant never subjected him to any type of harassment or discrimination.

really needed to leave his job during working hours; (3) by "constantly" telling him that he, Braden, needed Plaintiff to "do this and that" and "act[ing] like he had to have [the task] done right then and there"; (4) by directing Plaintiff to perform tasks while allegedly ignoring other employees who were not working; (5) by telling Gant "a couple of times" to tell Plaintiff what to do when Plaintiff was working on Gant's shift; (6) by not always providing Plaintiff with "light duty" job assignments, even though Braden knew he had been in an accident; (7) by allegedly telling Gant to verify Plaintiff's sister's identity when she died, after Plaintiff applied for funeral leave; and (8) by getting mad and blaming Plaintiff for breaking a forklift when it was not his fault that the forklift broke.  Plaintiff attributes Braden's harassment to have been motivated by race and, to the extent such harassment occurred after his automobile accident, also to his disabled status.

On July 13, 1999, Plaintiff's employment was terminated.  Tricon alleges that the decision to fire Plaintiff was made by Braden and Anderson collectively and was based on the need to cut one job position at the Clad Shop, due to an allegedly significant shortage in customer orders throughout the spring and early summer of 1999.  Seniority is not a determinative factor for purposes of laying off workers at Tricon, and Braden and Anderson claim that they determined to eliminate Plaintiff's Warehouseman position and have his duties absorbed by the remaining skilled personnel because it was the only unskilled position at the Clad Shop and because of Plaintiff's record of performance deficiencies and his inability to drive the company truck.  Braden and Anderson further explain that they decided to terminate Plaintiff, rather than reassign him, because there was, they claim, no business need for an additional Warehouseman at the Irondale facility, and Plaintiff's poor working relationship with his former Irondale supervisors made a transfer there "very impractical."  Finally, Braden and Anderson assert that they

considered that Plaintiff was not qualified for an Operator position, based on his poor performance record and limited skills. Thus, when Plaintiff's Warehouseman position was eliminated at the Clad Shop, Braden and Anderson terminated Plaintiff's employment.

On July 15, 1999, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been discriminated against on the basis of race and disability. After receiving his right to sue letter, Plaintiff filed his complaint in this Court on January 31, 2000. In that complaint, Plaintiff alleges claims against both Tricon and Braden under the following theories: (1) that his rights under the Equal Protection Clause of the Fourteenth Amendment have been violated; (2) that he was subjected to a hostile work environment, received lower pay, and was discharged because of race, in violation of Title VII and section 1981; and (3) that Defendants failed to accommodate his disability, and subjected him to a hostile work environment and discharged him based on disabled status, in violation of the ADA. The Court dismissed the claims against Braden brought pursuant to the Equal Protection Clause, Title VII, and the ADA, but allowed the section 1981 claim against Braden to proceed.[4] Defendants have filed the instant motion for summary judgment on all remaining claims.

## III.  CONTENTIONS & ANALYSIS

### A.  Fourteenth Amendment Equal Protection Claim

In his complaint, Plaintiff suggests that he might proceed against Tricon for a

---

[4]In disposing of Braden's prior motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court ruled that Braden might be held personally liable under section 1981 based upon the allegations of the complaint. See Leige v. Capitol Chevrolet, Inc., 895 F.Supp. 289, 293-94 (M.D. Ala. 1995). In the motion for summary judgment, Braden invites the Court to revisit that ruling. However, the Court will not do so, because it concludes that Braden, like Tricon, is entitled to summary judgment on Plaintiff's section 1981 claims, regardless of the scope of personal liability under that section.

violation of the Equal Protection Clause of the Fourteenth Amendment.[5] However, "the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." Shelley v. Kraemer, 334 U.S. 1, 13, and n. 12 (1948)(quoted in United States v. Morrison, ___ U.S. ___, ___, 120 S.Ct. 1740, 1756 (2000)). There is a patent absence of any state action in this case. See, e.g., Willingham v. Macon Tel. Pub. Co., 507 F.2d 1084, 1088 (5th Cir. 1975).[6] Accordingly, Plaintiff's claim against Tricon under the Equal Protection Clause is due to be dismissed.

### B. Race Discrimination Claims under Title VII and Section 1981

Plaintiff claims that he was subjected to racial discrimination and that Tricon is liable therefor under both Title VII and section 1981, while Braden is liable under only the latter statute. More specifically, Plaintiff claims that Braden both made the decision to terminate his employment with Tricon and subjected him to a hostile work environment because of his race. In his complaint, Plaintiff also seems to assert that Tricon paid him a lower salary because of his race. Defendants claim that they are entitled to summary judgment on each of these race discrimination claims. The Court will first address Plaintiff's race discrimination claim as it pertains to his termination, and then the Court will consider Plaintiff's claims of disparate pay and racial harassment, in that order.

------

[5]The Equal Protection Clause provides: "No State shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV.

[6]All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

### 1. Termination Because of Race

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 guarantees to all persons in the United States "the same right ... to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Following the passage of the Civil Rights Act of 1991, the term "make and enforce contracts" is broadly defined as including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Thus, both Title VII and section 1981 prohibit an employer from discharging an employee on the basis of race, and both statutes require the same proof to show liability. Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Thus, the Court will address Plaintiff's Title VII termination claim with the express understanding that the analysis applies to his section 1981 termination claim as well. See id.

Plaintiff attempts to prove that he was terminated based on race by using circumstantial evidence.[5] When a plaintiff offers circumstantial evidence to prove a Title VII discrimination claim, courts use the analytical framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. The establishment of a prima facie case creates a presumption of discrimination. The employer must then offer legitimate, nondiscriminatory reasons for the employment

_____

[5]Plaintiff does not contend that he might offer direct evidence or statistical evidence of race discrimination, the other avenues by which he might have attempted to prove his Title VII discrimination claim. See Standard, 161 F.3d at 1330.

action to rebut the presumption. If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are merely a pretext for unlawful discrimination. <u>Id.</u>, at 802-04.

Where an employee's discharge results as part of a reduction in force, the employee may establish a prima facie case of race discrimination under Title VII by (1) showing that he was a member of a protected group and was adversely affected by an employment decision; (2) proving that he was qualified for his own position or to assume another position at the time of the discharge; and (3) producing sufficient evidence from which a rational fact finder could conclude that his employer intended to discriminate against him on the basis of race in making the discharge decision. <u>Standard</u>, 161 F.3d at 1331 (citing <u>Benson v. Tocco, Inc.</u>, 113 F.3d 1203, 1208 (11th Cir. 1997)). See also <u>Williams v. Vitro Services Corp.</u>, 144 F.3d 1438, 1442 (11th Cir. 1998).   In this case, Defendant concedes that Plaintiff is black and was terminated, satisfying the first element.  Defendants argue that Plaintiff was not qualified to assume another position at the time of his discharge, but they cannot dispute that Plaintiff, who had worked for Tricon as a Warehouseman for nine years, was "qualified" to continue in that position. See <u>Damon v. Fleming Supermarkets Of Florida, Inc.</u>, 196 F.3d 1354, 1360 (11th Cir. 1999).  Thus, the second element is satisfied.  Defendants also contend that Plaintiff cannot present evidence tending to indicate that Defendant intended to discriminate against him on the basis of race. While the Court doubts whether Plaintiff has shown sufficient evidence to meet this element, the Court will assume that Plaintiff can establish it and thus a prima facie case. See <u>Standard</u>, 161 F.3d at 1331 (assuming a prima facie case was met).

Accordingly, the burden shifts to Tricon to produce evidence sufficient to allow a factfinder to determine that Tricon terminated Plaintiff's employment for a legitimate,

non-discriminatory reason. See Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). In this case, Tricon has obviously done so. In their declarations, Braden and Anderson state that a slowdown in work orders for the Clad Shop caused them to decide that one of the jobs at that facility would be eliminated. They claim that they did away with Plaintiff's position because he had the worst record of performance deficiencies at the Clad Shop, was the only "unskilled" worker in the Clad Shop, and was no longer allowed to drive the company truck. They further indicate that they considered there to be no need for an additional Warehouseman at the Irondale facility; and that given his prior relationship with his supervisors at Irondale, which had precipitated his transfer to the Clad Shop in the first place, reassigning Plaintiff to that facility would have been "very impractical." Finally, Braden and Anderson assert that they considered Plaintiff to be unqualified to fill any of the skilled Operator positions, because of his poor performance record and limited skills, and thus terminated him upon the elimination of his position at the Clad Shop.

In order to survive summary judgment, Plaintiff must now create a genuine issue of material fact as to whether the reasons advanced by Tricon are pretextual. Bogle v. Orange County Bd. of County Com'rs, 162 F.3d 653, 658 (11th Cir. 1998) (citations omitted). In other words, Plaintiff must provide sufficient evidence to allow a reasonable fact finder to conclude, at a minimum, that each of the proffered reasons was not actually the motivation for his discharge. See Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997), cert. denied, 118 S.Ct. 685 (1998). Plaintiff may do this (1) by showing that the legitimate nondiscriminatory reasons should not be believed; or (2) by showing that, in light of all of the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons. Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376

(11th Cir. 1996) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). See also Reeves v. Sanderson Plumbing Products, Inc., ___ U.S. ___, ___, 120 S.Ct. 2097, 2109 (2000) (holding that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated," but cautioning that such a showing may not always be adequate to sustain a finding of unlawful discrimination). In this case, Plaintiff takes both approaches.

First, Plaintiff urges that while Braden and Anderson assert in their declarations that they decided to terminate him simply because of "slow work" at the Clad Shop, he asserts that this reason is undercut by their offering Plaintiff's asserted performance deficiencies and disciplinary record as justifications. However, Braden and Anderson do not contend that Plaintiff "would have been fired regardless of the slow work," as Plaintiff would suggest. Plaintiff's Brief at 8. Rather than being newly asserted independent grounds for terminating Plaintiff, the reasons presented by Braden and Anderson relating to Plaintiff's lack of skills, lack of qualifications, and having more disciplinary problems plainly are elaborations on why Plaintiff, instead of someone else, was the individual whose job was chosen to be eliminated and why he was not reassigned to the Irondale facility. The fact that an employer offers a more detailed explanation of a general reason for an employment action is insufficient to show pretext. See Standard, 161 F.3d at 1332; Mayfield, 101 F.3d at 1377.

Plaintiff also appears to contend that he was, in fact, qualified to assume another position, contrary to Defendants' assertions. In his brief Plaintiff fails to specify any particular position for which he was qualified. Rather, he merely asserts, "It is Plaintiff's belief that there were other positions that he was qualified for at the time he was

terminated." Plaintiff's Brief at 6. Statements of fact in Plaintiff's brief, not in proper affidavit form, are not themselves evidence and cannot be considered on a motion for summary judgment in determining if a genuine issue of material fact exists. Helmich v. Kennedy, 796 F.2d 1441, 1443 (11th Cir. 1986); Direct Media Corp. v. Camden Tel. and Tel. Co., Inc., 989 F.Supp. 1211, 1217 (S.D. Ga. 1997). But even if this assertion was reduced to proper form, it would still be insufficient to indicate pretext. This is because the inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his qualifications. See Holifield v. Reno, 115 F.3d 1555, 1565 (11th Cir. 1997). See also Lee v. GTE Florida, Inc., ___ F.3d ___, 2000 WL 1288684, *5 (11th Cir. 2000). Plaintiff has offered nothing tending to indicate that Tricon actually believed Plaintiff was qualified for another position and still dismissed him, nor any evidence tending to show that he was "substantially more qualified" than any retained employee, as would be required to show pretext. See Lee, supra.

Finally, Plaintiff asserts that he can prove that race discrimination was more likely the true reason that Tricon terminated him, because, he alleges, Braden referred to him using a racial epithet. He admits that he never actually heard Braden or any other Tricon employee use a racial slur. Indeed, he does not allege that he heard any remarks referencing race. Instead, Plaintiff relies solely upon his own deposition testimony, in which he alleges that a former co-worker, Cameron McFall, told him that Braden referred to Plaintiff using a racial slur. Defendants have responded by submitting McFall's declaration, wherein he expressly denies ever having heard Braden ever do any such thing. Defendants also argue that Plaintiff's deposition testimony as to what McFall told him Braden said is inadmissible hearsay that cannot be considered on summary judgment. The Court agrees.

The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment. <u>Macuba v. Deboer</u>, 193 F.3d 1316, 1322 (11th Cir. 1999). Rule 56(e) of the Federal Rules of Civil Procedure requires that "affidavits" that support or oppose summary judgment motions "shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." This rule also applies to testimony given on deposition. <u>Macuba</u>, 193 F.3d at 1323. It is unmistakable that Plaintiff here is offering his own testimony to prove the truth of the matter that McFall asserted to him, <u>i.e.</u>, that Braden used racial epithets and did so in reference to Plaintiff.[6] As such, it is hearsay and cannot be considered on summary judgment. See <u>Mauclair v. Airborne Freight Co.</u>, 1995 WL 447347, *4 (N.D. Ga. 1995), aff'd, 81 F.3d 177 (11th Cir. 1996) (table); <u>Russell v. Acme-Evans Co.</u>, 51 F.3d 64, 68 (7th Cir. 1995); <u>Gross v. Burggraf Const. Co.</u>, 53 F.3d 1531, 1541-42 (10th Cir. 1995).

Based on the foregoing, the Court concludes that Plaintiff has failed to present sufficient evidence to create an issue of material fact with respect to whether racial discrimination was more likely the true reason for Tricon's decision to terminate him. Likewise, the Court determines that Plaintiff has failed to offer substantial evidence indicating that any of the reasons offered for his termination were not worthy of credence. Therefore, the Court finds that, with respect to Plaintiff's claim that he was terminated because of his race in violation of Title VII and section 1981, there is no genuine issue of fact remaining and that Defendants are entitled to judgment as a matter of law. Defendants' motion for summary judgment on this claim will be granted.

---

[6]There is no allegation or evidence indicating that McFall's statements to Plaintiff concerned a matter within the scope of McFall's employment or agency, so as to render those statements a non-hearsay admission under Fed. R. Evid. 801(d)(2)(D). See <u>Wilkinson v. Carnival Cruise Lines, Inc.</u>, 920 F.2d 1560, 1565-66 (11th Cir. 1991); <u>Miles v. M.N.C. Corp.</u>, 750 F.2d 867, 874-75 (11th Cir. 1985).

### 2.  Disparate Compensation Because of Race

In his complaint, Plaintiff claims that Tricon acted unlawfully by allegedly "failing and refusing to pay Plaintiff salaries and afford Plaintiff benefits comparable to those of his white counterparts . . . ."  Complaint ¶ 21.  There is no doubt an employer may not, under Title VII and section 1981, discriminate on the basis of race with respect to the compensation that it pays to its employees.  However, Defendants point out that Plaintiff conceded at his deposition that he was not pursuing such an allegation, and Plaintiff has offered no evidence in support of it on summary judgment.  Accordingly, the Court concludes that Defendants' motion for summary judgment is due to be granted with respect to these Title VII and section 1981 claims.

### 3.  Hostile Work Environment Because of Race

Plaintiff also claims that Tricon and Braden are liable for subjecting him to harassment in the workplace, because of his race.  It has long been recognized that "the phrase 'terms, conditions, or privileges of employment' in [Title VII] is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with ethnic or racial discrimination."  Rogers v. EEOC, 454 F.2d 234, 238 (5th Cir. 1971), cert. denied, 406 U.S. 957 (1972).  "Of course, . . . not all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII."  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).  Rather, it is only when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' " that Title VII is violated.  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (quoting Vinson, 477 U.S. at 2405) (internal citations omitted).  That is, a

plaintiff must establish that the harassment occurred "because of" race, see 42 U.S.C. §
2000e-2(a)(1); cf. Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 79-80 (1998)
(analyzing a Title VII's "because of" language in the context of a claim alleging sexual
harassment), and was also both subjectively and objectively offensive--that a reasonable
person would find the environment "hostile or abusive" and that the plaintiff actually did
find the environment to be such. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993);
Mendoza v. Borden, Inc., 195 F.3d 1238 (11th Cir. 1999) (en banc). The Eleventh Circuit
Court of Appeals has indicated that, following the passage of the 1991 Civil Rights Act,
claims alleging a racially hostile work environment are also cognizable under 42 U.S.C.
§ 1981(b), and that courts faced with such claims should employ the same analysis used
for hostile environment claims brought under Title VII. See Jackson v. Motel 6
Multipurpose, Inc., 130 F.3d 999, 1008 & n.17 (11th Cir. 1997); Vance v. Southern Bell Tel.
& Tel. Co., 983 F.2d 1573, 1576 n.12 (11th Cir. 1993).

The Court would initially note that, given the exclusion of Plaintiff's hearsay
evidence that he was told Braden used a racial epithet, there is precious little evidence to
suggest that any of the alleged "harassment" Plaintiff endured during his employment
with Tricon occurred "because of" his race. Plaintiff does not complain that he heard any
Tricon employee use a racial slur, make racial jokes, or make any remarks referring to
race at all. Of course, there are other ways that an employee might establish that his
employer's harassing actions are motivated by race, most notably by showing that his
employer treated him less favorably than similarly situated employees of a different race.
See, e.g., Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) ("[R]ace . . . based animosity
could be shown by [the employer's] differential treatment of similarly situated . . . black
employees . . . ."). Plaintiff appears to attempt taking this route, by offering that

Clements and Braden are white and generally supervised him more closely than they did other workers. See Plaintiff's Depo. at 80-81, 106-08. However, Plaintiff never states the race of these other employees, nor does he indicate how they were similarly situated, such as whether they had a substantial record of disciplinary problems, as did Plaintiff. Indeed, Plaintiff's testimony seems even to imply that Braden's actions in dealing with Plaintiff were motivated by reasons other than race, as Plaintiff complains that Braden did not subject Plaintiff's nephew to the same scrutiny to which he was subjected. Id. at 106. The Court concludes that Plaintiff has failed to produce substantial evidence to indicate that any of the incidents about which he complains were motivated by race.

Even assuming that Plaintiff could show the requisite discriminatory intent, the Court concludes that he has failed to present substantial evidence indicating that the alleged harassment was severe or pervasive enough to constitute an objectively hostile work environment for purposes of Title VII or section 1981. In examining whether an employee's work environment is sufficiently hostile or abusive to be actionable, courts must "look[ ] at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. None of the conduct in this case is severe at all, nor does Plaintiff allege any conduct or statements that might be reasonably construed as physically threatening or humiliating. Indeed, the evidence shows that Plaintiff did not even endure offensive utterances at work. The Court has excluded the hearsay evidence indicating that Braden used racial slurs in the presence of Plaintiff's co-worker. But even if such evidence was considered, such slurs were never made in Plaintiff's presence and it is not even clear that he learned about it while he was still employed at Tricon. See Busby

v. City of Orlando, 931 F.2d 764, 785 (11th Cir. 1991). In any event, the "'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" would not affect the conditions of employment to sufficiently significant degree to violate Title VII.' " Vinson, 477 U.S. at 67 (quoting Rogers, 454 F.2d at 238)). At most, Plaintiff alleges that he was subjected to some greater degree of scrutiny and supervision than were other employees during some periods during the nine years that he was employed by Tricon. The Court concludes that such allegations simply fall far short of what is required to show an objectively hostile work environment. Compare Edwards v. Wallace Community College, 49 F.3d 1517, 1522 (11th Cir. 1995); Moore v. Holiday Inn East, 210 F.3d 375 (table), 2000 WL 133841, **2 (7th Cir. 2000) (evidence insufficient to support hostile work environment claim, despite plaintiff's "general allegations that she was harassed 'almost daily' from 1991 to 1994 based on her race, in particular that she was subjected to excessive supervision and unnecessary criticism and was 'rushed' through her work"); Huckaby v. Crown, Cork & Seal, 1999 WL 680228, *5 (N.D. Tex. 1999) (evidence insufficient where Plaintiff complained of receiving an inordinate amount of supervision), with E.E.O.C. v. Beverage Canners, Inc., 897 F.2d 1067, 1068-69 (11th Cir. 1990) (racial slurs allegedly spoken by co-workers were so "commonplace, overt and denigrating that they created an atmosphere charged with racial hostility") Walker v. Ford Motor Co., 684 F.2d 1355, 1359 (11th Cir. 1982) (atmosphere at automobile dealership at which plaintiff had been a trainee violated Title VII in view of findings that dealership personnel's use of racial slur, and other racially abusive language was repeated, continuous and prolonged despite plaintiff's objections). Summary judgment will be granted on

Plaintiff's racially hostile work environment claims.[7]

## C. Disability Discrimination Claims under the ADA

Plaintiff also contends that Tricon is liable under the ADA. Plaintiff contends that Tricon unlawfully discriminated against him on the basis of disability, by allegedly failing to accommodate his disability and by subjecting him to harassment and terminating his employment because of his disabled status. Tricon has moved for summary judgment on each of these claims.

### 1.  Termination Because of Disability

Under the ADA, an employer may not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). In

---

[7]Tricon additionally contends that, because Title VII requires an individual to file a charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred, see 42 U.S.C. § 2000e-5(e)(1), Plaintiff cannot recover thereunder for any racially harassing conduct that occurred prior to 180 days before he filed his EEOC charge: January 18, 1999. Defendants similarly allege that Plaintiff cannot recover under section 1981 for any discrimination that occurred before January 30, 1997, because section 1981 claims are governed by Alabama's two-year statute of limitations for personal injury actions. See Peterson v. BMI Refractories, Inc., 132 F.3d 1405, 1414 (11th Cir. 1998). In response, Plaintiff argues that his racially hostile work environment claims implicate a "continuing violation" that allow him to recover for the entire period of racial harassment, even though some discriminatory conduct occurred outside the applicable time limitations period. See Gonzalez v. Firestone Tire & Rubber Co., 610 F.2d 241, 249-50 (5th Cir. 1980); Taylor v. Alabama, 95 F.Supp. 2d 1297, 1307 (M.D. Ala. 2000). However, because the Court concludes that, even if all alleged harassment is considered, there is insufficient evidence to indicate that such harassment was racially motivated or was severe or pervasive enough to have rendered Plaintiff's work environment "hostile or abusive" to a reasonable person, the Court need not decide the limitations period issues.

order to make out a prima facie case of discrimination, a plaintiff must show: (1) he is disabled, (2) he is a qualified individual, and (3) he was subjected to unlawful discrimination because of his disability. Id. In his brief, Plaintiff claims that he is disabled because of his sensitivity to light, which was caused by an injury to his left eye sustained in the aforementioned car accident. Even assuming that Plaintiff could make out a prima facie case of discrimination with respect to his termination, which is very questionable, the Court concludes that Plaintiff has failed to present any evidence indicating that the legitimate, non-discriminatory reasons offered by Defendants for his termination were pretextual. As noted in the discussion of Plaintiff's claim that his firing was racially motivated, Plaintiff has wholly failed to present evidence indicating that the reasons offered were not true or that Braden or Anderson did not honestly believe such was the case. Nor has Plaintiff presented any evidence suggesting that Braden or Anderson made statements affirmatively indicating that they held a bias against Plaintiff because of his condition. Therefore, the Court concludes that Plaintiff has failed to sufficiently show pretext to survive summary judgment on this ADA claim.

### 2. Disability Accommodation

Plaintiff also seems to suggest that Tricon discriminated against him by allegedly failing to accommodate his disability. "Under the ADA rubric of discrimination, an employer must make reasonable accommodations that allow a disabled individual to perform her job, unless that accommodation would cause an undue hardship." Standard, 161 F.3d at 1327 (citing Harris v. H & W Contracting Co., 102 F.3d 516, 519 (11th Cir. 1996); 42 U.S.C. § 12112(b)(5)(A)). However, the undisputed evidence shows that when Plaintiff informed his supervisor that his eye was sensitive to light after his accident, Tricon immediately moved Plaintiff, with no change in pay or job classification, to

perform other duties that minimized his exposure to light and also provided him with shaded eye protection. The Court concludes that Tricon is entitled to summary judgment on this claim.

### 3. Hostile Work Environment Because of Disability

Assuming both that the ADA provides a hostile-work-environment cause of action, see Williamson v. International Paper Co., 85 F.Supp.2d 1184, 1187 n.3 (S.D. Ala. 2000), and that Plaintiff could show he is "disabled" within the meaning of the ADA, Defendant is still entitled to summary judgment on this claim. For an ADA claim alleging a hostile work environment to be viable, the plaintiff would, like a Title VII plaintiff, have to show that the harassment complained of was occasioned by his disabled status, real or perceived, and was also so severe or pervasive that it created an objectively hostile work environment. See id.; Hartsfield v. Miami-Dade County, 90 F.Supp.2d 1363, 1376 (S.D. Fla. 2000). Here, however, Plaintiff concedes that no one ever said anything derogatory about either his condition or his inability to perform any tasks after he returned to work subsequent to his return after his car accident. Given the evidence, the Court concludes Plaintiff has failed to prove that any harassment was motivated by disability. In addition, Plaintiff bases this claim on the same incidents underlying his racially hostile work environment claim, to the extent that such events occurred after he returned to work subsequent to his car accident. The Court has already concluded that the entirety of that harassment was, as a matter of law, insufficiently severe or pervasive to indicate that Plaintiff's work environment was objectively hostile or abusive. That same analysis pertains here as well. Accordingly, Tricon is entitled to summary judgment on Plaintiff's ADA claim alleging a hostile work environment.

### IV. CONCLUSION

The Court concludes that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law on all of Plaintiff's remaining claims, alleging violations of the Equal Protection Clause, Title VII, section 1981, and the ADA. Plaintiff's Equal Protection claims are doomed because the evidence establishes that there is absolutely no state action present in this case. Plaintiff's claims that he was terminated because of his race and/or disability fail because even assuming Plaintiff could establish a prima facie case of discrimination, Plaintiff has utterly failed to present any admissible evidence tending to show that the legitimate, non-discriminatory reasons offered by Tricon were pretextual. Plaintiff also abandoned the somewhat vague suggestion in his complaint that he received lower compensation because of race. Finally, Plaintiff has not offered evidence indicating that the harassment of which he complains was motivated by his race or disabled status or that such harassment was sufficiently severe or pervasive to create an objectively hostile work environment. Accordingly, Defendants' motion for summary judgment (Doc. 18) will be GRANTED, and Plaintiff's remaining claims will be DISMISSED with prejudice. A separate order will be entered.

DONE and ORDERED this 27th day of September, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE